UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

CHAMBERS OF
BRENDAN A. HURSON
UNITED STATES MAGISTRATE JUDGE

101 WEST LOMBARD STREET
BALTIMORE, MARYLAND 21201
(410) 962-0782
MDD_BAHChambers@mdd.uscourts.gov

January 13, 2023

LETTER TO ALL COUNSEL OF RECORD

Re:  *Melissa J. v. Kilolo Kijakazi, Acting Commissioner, Social Security Administration*
     Civil No. 22-1003-BAH

Dear Counsel:

On April 25, 2022, Plaintiff Melissa J. ("Plaintiff") petitioned this Court to review the Social Security Administration's ("SSA's" or "Commissioner's" or "Defendant's") final decision to deny Plaintiff's claim for Social Security benefits. ECF 1. This case was then referred to me with the parties' consent. *See* 28 U.S.C. § 636; Loc. R. 301 (D. Md. 2021). I have considered the record in this case, ECF 8, the parties' cross-motions for summary judgment, ECFs 14 and 16, and Plaintiff's reply, ECF 18.[1] I find that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2021). This Court must uphold the decision of the SSA if it is supported by substantial evidence and if the SSA employed proper legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Under that standard, I will DENY Plaintiff's motion, GRANT Defendant's motion, and AFFIRM the Commissioner's decision. This letter explains why.

I. **PROCEDURAL BACKGROUND**

Plaintiff filed a Title II application for Disability Insurance Benefits ("DIB") in January 2020, alleging a disability onset of October 18, 2019. Tr. 219–22. Plaintiff's claim was denied initially and on reconsideration. Tr. 128–36, 141–46. On June 24, 2021, an Administrative Law Judge ("ALJ") held a hearing. Tr. 46–85. Following the hearing, on August 11, 2021, the ALJ determined that Plaintiff was not disabled within the meaning of the Social Security Act[2] during the relevant time frame. Tr. 20–45. The Appeals Council denied Plaintiff's request for review, Tr. 1–6, so the ALJ's decision constitutes the final, reviewable decision of the SSA. *Sims v. Apfel*, 530 U.S. 103, 106–07 (2000); *see also* 20 C.F.R. § 422.210(a).

---

[1] The Court acknowledges Standing Order 2022-04 amending the Court's procedures regarding Social Security appeals to comply with the Supplemental Rules for Social Security Actions under 42 U.S.C. § 405(g), which became effective December 1, 2022. Under the Standing Order, the nomenclature of parties' filings has changed to "briefs" from "motions for summary judgment." Because the motions in this case were filed prior to the effective date of the Standing Order, the Court will refer to them as motions for summary judgment.

[2] 42 U.S.C. §§ 301 et seq.

*Melissa J. v. Kijakazi*
Civil No. 22-1003-BAH
January 13, 2023
Page 2

## II.   THE ALJ'S DECISION

Under the Social Security Act, disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505(a). The ALJ is required to evaluate a claimant's disability determination using a five-step sequential evaluation process. *See* 20 C.F.R. § 404.1520. "Under this process, an ALJ evaluates, in sequence, whether the claimant: '(1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to her past relevant work; and (5) if not, could perform any other work in the national economy.'" *Kiser v. Saul*, 821 F. App'x 211, 212 (4th Cir. 2020) (citation omitted) (quoting *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012)).

Here, at step one, the ALJ determined that Plaintiff "has not engaged in substantial gainful activity since October 18, 2019, the alleged onset date." Tr. 25. At step two, the ALJ found that Plaintiff suffered from the severe impairments of "affective mood disorder, anxiety disorder, trauma related disorders, sleep apnea, and obesity." Tr. 26. At step three, the ALJ determined that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." Tr. 26. The ALJ also determined that Plaintiff had moderate limitations in the four functional capacities, including concentrating, persisting, and maintaining pace. Tr. 27–28. Despite these impairments, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to:

> perform medium work as defined in 20 CFR 404.1567(c) except she can only occasionally climb ramps/stairs, balance, stoop, kneel, crouch, and crawl, but never climb ropes, ladders, or scaffolds. She can only occasionally be exposed to moving mechanical parts and unprotected heights. She is limited to simple, routine tasks not performed at a production rate for pace of work. She can only occasionally interact with supervisors, co-workers, and the public. She can only occasionally adjust to changes in workplace settings. She is limited to applying commonsense understand to carry out uninvolved written or oral instructions. She is limited to dealing with problems involving a few concrete variables in or from standardized situations. She is limited to working in two-hour increments following which the claimant would need a break of at least 10 minutes. These breaks can be accommodated by customary or normal work breaks.

Tr. 29. The ALJ determined that Plaintiff was not able to perform past relevant work as a foreign service officer (DOT 188.117-106)[3] or retail sales clerk (DOT 279.357-054) but could perform

---

[3] The "DOT" is shorthand for the Dictionary of Occupational Titles. The Fourth Circuit has explained that "[t]he *Dictionary of Occupational Titles*, and its companion, *Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles* . . . , are

other jobs that existed in significant numbers in the national economy. Tr. 35–37. Therefore, the ALJ concluded that Plaintiff was not disabled. Tr. 37.

### III.   LEGAL STANDARD

As noted, the scope of this Court's review is limited to determining whether substantial evidence supports the ALJ's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987); *see also Britt v. Saul*, 860 F. App'x 256, 259 (4th Cir. 2021) (citing *Mascio v. Colvin*, 780 F.3d 632, 634 (4th Cir. 2015)) ("A disability determination must be affirmed so long as the agency applied correct legal standards and the factual findings are supported by substantial evidence."). "The findings of the [ALJ] . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g).

Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966); *see also Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)) ("[Substantial evidence] means—and means only—"such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."""). It is "more than a mere scintilla . . . and somewhat less than a preponderance." *Laws*, 368 F.2d at 642. In conducting the "substantial evidence" inquiry, my review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained their findings and rationale in crediting the evidence. *See, e.g.*, *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997); *DeLoatche v. Heckler*, 715 F.2d 148, 150 (4th Cir. 1983) ("Judicial review of an administrative decision is impossible without an adequate explanation of that decision by the [ALJ].").

### IV.   ANALYSIS

Plaintiff argues that the ALJ erroneously failed to explain the meaning of "production rate or production pace work" to the vocational expert ("VE") or the limitation precluding work "performed at a production rate for pace of work" in the RFC, conflicting with the Fourth Circuit's holding in *Thomas v. Berryhill*, 916 F.3d 307 (4th Cir. 2019). ECF 14-1, at 9–24. Plaintiff asserts that the failure to define this term to the VE was erroneous because "it would have been impossible for the VE to assess whether a person with Plaintiff's limitations could maintain the pace proposed." *Id.* at 10. Further, in Plaintiff's estimation, the failure to define the term in the RFC coincided with the ALJ's failure to provide a narrative discussion explaining how limiting Plaintiff to jobs that did not include "a 'production rate for pace of work' . . . would be sufficient to

---

[SSA] resources that list occupations existing in the economy and explain some of the physical and mental requirements of those occupations. U.S. Dep't of Labor, *Dictionary of Occupational Titles* (4th ed. 1991); U.S. Dep't of Labor, *Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles* (1993)." *Pearson v. Colvin*, 810 F.3d 204, 211 n.1 (4th Cir. 2015).

*Melissa J. v. Kijakazi*
Civil No. 22-1003-BAH
January 13, 2023
Page 4

accommodate Plaintiff's impairments." *Id.* at 17–18 (citing Tr. 29).

Defendant counters that this case is not analogous to *Thomas* because the ALJ provided ample descriptions of what was meant by "production rate work" both in the ALJ's conversation with the VE during the hearing and in the ALJ's RFC analysis. ECF 16-1, at 6–14. Thus, Defendant explains, the Court can perform meaningful review of the ALJ's decision and is not left to guess how the ALJ arrived at their conclusions, so it is supported by substantial evidence. *Id.* at 14.

In *Thomas*, the Fourth Circuit ordered remand when "the ALJ stated that [the plaintiff] could not perform work 'requiring a production rate or demand pace,'" but failed to provide "enough information to understand what those terms mean." 916 F.3d at 312. "The Fourth Circuit later determined, however, that additional 'descriptors . . . helped to explain the restriction intended by the ALJ, and allowed [the court] to evaluate whether the restriction adequately accounted for [plaintiff's] limitations.'" *Marcia S. v. Kijakazi*, No. BPG-21-679, 2022 WL 1714853, at *2 (D. Md. Mar. 1, 2022) (alterations in original) (quoting *Perry v. Berryhill*, 765 F. App'x 869, 872 n.1 (4th Cir. 2019)); *see also Sizemore v. Berryhill*, 878 F.3d 72, 79 (4th Cir. 2017).

Here, the ALJ's RFC includes a limitation precluding Plaintiff from work "performed at a production rate for pace of work," Tr. 29, and the ALJ asked the VE to define "production rate work" or "production pace work" at the hearing. Tr. 82–83. These terms are almost interchangeable with the terminology utilized in *Thomas*. Thus, if the ALJ failed to provide additional information "about what those terms mean," it is "difficult, if not impossible, for [the Court] to assess whether their inclusion in [Plaintiff's] RFC is supported by substantial evidence." *Thomas*, 926 F.3d at 312. This case does not, however present an identical situation to the one *Thomas*.

This case is more akin to *Marcia S.*, where the inclusion of a limitation on "production rate or pace" withstood a claimant's challenge because additional text in the ALJ's decision provided an ample basis for judicial review. 2022 WL 1714853, at *2. The additional text included a limitation mandating "no quota driven work." *Id.* at *2. Numerous courts, including this one, have held a limitation on "production rate or pace" combined with a prohibition on quotas provides enough detail for judicial review. *See, e.g., id.*; *April K. v. Kijakazi*, No. 21-1538-BAH, 2022 WL 2793048, at *5 (D. Md. July 15, 2022); *Shuronn S. v. Kijakazi*, No. TJS-20-3756, 2022 WL 391434, at *2 (D. Md. Feb. 9, 2022) (affirming ALJ's use of "fast pace or strict production quotas"); *Kenneth L. v. Kijakazi*, No. SAG-20-624, 2021 WL 4198408, at *2 (D. Md. Sept. 15, 2021) (affirming ALJ's use of "no strict production quotas"); *Jackie W. v. Comm'r, Soc. Sec. Admin.*, No. DLB-18-3883, 2019 WL 5960642, at *1 (D. Md. Nov. 13, 2019).

Similar additional descriptions are present here. During the hearing, the ALJ and the VE held the following exchange:

> ALJ: . . . [W]ould it also be correct to say that all of these positions do not involve production rate work or production pace work?

>VE: That's correct, Your Honor.
>
>. . .
>
>ALJ: Would it be possible, Ms. Montgomery, to explain what production rate work is . . . ?
>
>. . .
>
>VE: Production rate is generally based on quota pay, such as a tire builder position.
>
>ALJ: Okay. Is it typically in the manufacturing industry?
>
>VE: Correct.
>
>ALJ: Would it be correct to say, Ms. Montgomery, that the DOT does not address the limitations pertaining to . . . production rate work . . .?
>
>VE: That would be correct, Your Honor.
>
>ALJ: And what are you relying on for those aspects of your testimony?
>
>VE: My professional training, professional knowledge, professional work experience, within a reasonable degree of probability, in the field of vocational rehabilitation.

Tr. 82–83. Further, the ALJ explained in the written opinion that "production rate work" "was explained [during the hearing] as typically involving [and] generally requiring production quotas or pay and typically in the manufacturing industry." Tr. 37.

Plaintiff argues that this is not sufficient because the ALJ relied on the VE to set the parameters of the potential limitations rather than the VE relying on the ALJ's parameters. ECF 18, at 4–8. Plaintiff contends that the VE was then improperly left to speculate about what the ALJ meant by "production rate work." *Id.* at 4. Plaintiff relies on two cases for the proposition that this precludes meaningful review by this Court. *Id.* at 5 (citing *Angela W. v. Saul*, No. CBD-19-2083, 2021 WL 1215774 (D. Md. Mar. 31, 2021); *Gendeloff v. Saul*, No. 1:19-cv-02400-JMC, (D. Md. Dec. 17, 2020), ECF 20). But the cases Plaintiff cites do not support her position.

In *Gendeloff*, Judge Coulson remanded where the ALJ only provided a definition of "production rate pace" in the written opinion, omitting that definition from the hypothetical to the VE. *Gendeloff*, at 3. In *Angela W.*, the ALJ failed to define "production rate pace" both to the VE and in the written opinion. 2021 WL 1215774, at *4–5. Here, "[c]ritically," the definition of the term "occurred in conjunction with the ALJ's hypothetical to the VE (as opposed to a post hoc

explanation in the ALJ's written opinion)." *Gendeloff*, at 3 (citing *Jackie W.*, 2019 WL 5960642, at *4). Plaintiff has provided no caselaw that would compel the Court to find the above-quoted interaction between the ALJ and VE unreviewable.[4] I find that the limitation of no work "performed at a production rate for pace of work" and "production rate work" were sufficiently defined as a prohibition on quotas and typically in the manufacturing industry to allow for meaningful review.

Plaintiff's next argument that the ALJ erroneously failed to "explain how he decided that Plaintiff cannot perform jobs requiring a 'production rate for pace of work', or why he believed such a limitation would be sufficient to accommodate Plaintiff's impairments" is also unpersuasive. ECF 14-1, at 17–18 (quoting Tr. 29). "'[A] proper RFC analysis' proceeds in the following order: '(1) evidence, (2) logical explanation, and (3) conclusion.'" *Dowling v. Comm'r, Soc. Sec. Admin.*, 986 F.3d 377, 388 (4th Cir. 2021) (quoting *Thomas*, 916 F.3d at 311). "An RFC analysis must "include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." *Mascio*, 780 F.3d at 636. In *Mascio*, the Court held that "[r]emand may be appropriate . . . where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review." *Id.* (quoting *Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2015) (per curiam)).

Plaintiff concedes that "the ALJ summarized the medical evidence, discussed Plaintiff's symptoms, weighed various opinions of record, and offered a conclusion as to Plaintiff's RFC." *Id.* at 17. Though Plaintiff is correct that "[t]he ALJ mentioned the 'production rate for pace' limitation only twice in his entire RFC analysis," *id.* at 18, it is clear from a review of the ALJ's decision here that, unlike the ALJs in *Mascio* and *Dowling*, the ALJ here provided ample reference to the record to support the RFC determination with substantial evidence. The ALJ engaged in a narrative discussion of Plaintiff's medical evidence spanning over six pages and citing to specific medical evidence in the record, including numerous records relating to Plaintiff's "intact attention and concentration." Tr. 29–35. The ALJ then logically explained how this evidence, coupled with Plaintiff's hearing testimony that she "she works 10 hours per week as a program assistant at

---

[4] I am unpersuaded that remand is warranted because "the ALJ did not explain to the vocational expert what he meant by production rate work or production pace work before asking the expert to explain what production rate work is." ECF 18, at 4. The VE provided the definition of "production rate work" immediately after she answered the ALJ's question about production rate work. Tr. 82. The precise order of the conversation is immaterial here, as I am able to discern from the transcript of the exchange that the VE's testimony is substantial evidence for the ALJ's step five finding. Nor am I persuaded by Plaintiff's argument that because "quota" modified "pay" and did not refer to a specified pace limit that the meaning is changed enough to render the definition unreviewable. *See* ECF 18, at 6. As noted, this Court has repeatedly upheld ALJ decisions where a limitation of no "production rate pace" work is defined by a lack of quotas. *See, e.g.*, *Marcia S.*, 2022 WL 1714853, at *2; *April K.*, 2022 WL 2793048, at *5; *Shuronn S.*, 2022 WL 391434, at *2; *Kenneth L.*, 2021 WL 4198408, at *2; *Jackie W.*, 2019 WL 5960642, at *1.

Maryland National Capital Park & Planning" and "that she reads children's books to kids and assists the manager with designing program materials and other tasks such as assisting with attendance, craft materials and setting up" led the ALJ to conclude that Plaintiff's impairments warrant, among other limitations, no more than a limitation precluding work that involves "production [r]ate for pace of work." Tr. 32.

Further, in evaluating the medical opinions of Dr. Mikhael Taller, Dr. Nicole Stern, Masha Levy, LCSW-C, Mr. Daniel Moore, Dr. Patricia Cott, and Dr. Joan Joynson, the ALJ discussed how the conclusions in those medical opinions conflicted with or supported other medical evidence in the record. Tr. 34 ("In general, [Dr. Taller's] opinion is consistent with clinical observations noting [Plaintiff] exhibited goal directed thought processes, intact insight and judgment, intact recent and remote memory, intact attention and concentration, and an excellent fund of knowledge."); *id.* (noting the same about Dr. Stern's medical opinion); *id.* (finding Masha Levy's, LCSW-C, medical opinion that Plaintiff "was unable to maintain attention and concentration for two hour segments; perform activities within a strict schedule; and maintain regular attendance for 15% of more a normal workday" "unpersuasive" because "it is generally inconsistent with clinical observations noting that she exhibited goal directed thought processes, intact insight and judgment, intact recent and remote memory, intact attention and concentration, and an excellent fund of knowledge" and "with [Plaintiff's] testimony that she works 10 hours per week as a program assistant"); *id.* at 34–35 (finding the same regarding Mr. Moore's medical source opinion); *id.* at 35 (finding Dr. Cott's and Dr. Joynson's opinions that "found [Plaintiff] is able to sustain attention and concentration to complete tasks throughout a standard workday and week" "somewhat persuasive" because it accounted for Plaintiff's "intact attention and concentration" but "failed to adequately account for moderate restrictions in social functioning"). Plaintiff does not take issue with these medical opinions, or the weight that the ALJ gave them, on appeal.

Though Plaintiff does point out numerous pieces of evidence shedding light on Plaintiff's ability to concentrate or complete tasks, ECF 14-1, at 21–22, Plaintiff ignores that the ALJ similarly cited to, and discussed, evidence addressing the same issue and ultimately determined that Plaintiff's concentration was not so severely limited as to warrant additional limitations. Tr. 29–35. "This court does not reweigh evidence or make credibility determinations in evaluating whether a decision is supported by substantial evidence; '[w]here conflicting evidence allows reasonable minds to differ,' we defer to the Commissioner's decision." *Fiske v. Astrue*, 476 F. App'x 526, 527 (4th Cir. 2012) (quoting *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam)). Although reasonable minds may differ as to whether Plaintiff's moderate impairment in concentrating, persisting, and maintaining pace rises to the level of needing an additional RFC limitation, the Court defers to the ALJ's determination because it is supported by substantial evidence and was adequately explained in the ALJ's written opinion.

## V. CONCLUSION

For the reasons set forth herein, Plaintiff's motion for summary judgment, ECF 14, is DENIED and Defendant's motion for summary judgment, ECF 16, is GRANTED. Pursuant to sentence four of 42 U.S.C. § 405(g), the SSA's judgment is AFFIRMED. The clerk is directed to

*Melissa J. v. Kijakazi*
Civil No. 22-1003-BAH
January 13, 2023
Page 8

CLOSE this case.

      Despite the informal nature of this letter, it should be flagged as a Memorandum Opinion. A separate implementing Order follows.

                                         Sincerely,

                                             /s/

                                         Brendan A. Hurson
                                         United States Magistrate Judge